Robert P. Owens
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
(907) 343-4545
uslit@muni.org

Attorney for Defendants
Municipality of Anchorage
APD Badge #1503, Shirley Winborg
APD Badge # 1075, Gil Davis

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DANIEL DENARDO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUNICIPALITY OF ANCHORAGE, | ) |
| APD Badge #1503, SHIRLEY WINBORG, and | ) |
| APD Badge #1075, GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

U. S. District Court Case No. A04-0269 CI (RRB)

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

The Municipality of Anchorage, APD Officer Winborg, and APD Officer Davis, ("Defendants") hereby move this court for an order dismissing plaintiff's claims against defendants on the basis that under the facts presented in this proceeding defendants are immune from suit under relevant state and federal law.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

There is likely to be little dispute concerning the facts of this case even though plaintiff admits only that he sought admission to the United States District Court on two occasions during one day on or about December 6, 2002. *See,* Plaintiff's Response to Requests for Admission number 1, attached hereto as Exhibit "A". On the day in question, defendants Davis and Winborg were dispatched to the Federal Building, 222 W. 7th, to contact security concerning Daniel DeNardo who was flagged as uncooperative. *See,* Declaration of Gil Davis, ¶ 2 ("Davis Declaration" hereinafter), *See also,* Declaration of Chirley Winborg, ¶ 2 ("Winborg Declaration" hereinafter). Defendants Davis and Winborg contacted security at the 8th and A entrance where federal security Officer Tracy Miller identified plaintiff as the individual being detained. Davis Declaration, ¶ 3; Winborg Declaration, ¶¶ 3, 4. Officer Miller told defendants that Mr. DeNardo had been informed that the expired passport he was attempting to use as identification was insufficient and he was asked to leave the building. Davis Declaration ¶ 4. When he refused, the federal security officers requested assistance from APD. Davis Declaration ¶ 2. Federal Security Officer Miller was one of two uniformed officers stationed at the entrance to the building near the x-ray baggage scanner. Davis Declaration ¶ 6, Winborg Declaration, ¶ 5.

Mr. DeNardo was arrested for criminal trespass under Anchorage Municipal Code 08.45.010(3) which prohibits individuals from remaining in a public building after the person has been requested to leave by someone with apparent authority to do so. Davis Declaration ¶ 10, Winborg Declaration, ¶ 7. He was taken before the magistrate for a bail hearing and released on his own recognizance. Winborg Declaration, ¶ 8. A few days later the Deputy Municipal Attorney declined to prosecute the case. Two days later Mr. DeNardo brought this suit.

The original complaint filed by plaintiff asserted claims under 42 U.S.C. §§ 1983 and 1988 as well as the Alaska Constitution, Article IV, Section 3. The Municipality removed the case to this court in a timely fashion. Plaintiff sought to avoid removal by amending his complaint and filing a motion to remand. When the remand motion was denied, plaintiff filed a Writ of Mandamus, apparently in the Ninth Circuit, and an appeal to the District of Columbia Court of Appeals. He also signed a stipulation to dismiss with prejudice these proceedings, but later withdrew his consent and sought reinstatement of his complaint. This Court rescinded the Stipulation for Dismissal on January 27, 2006 and requested a certificate of readiness for trial.

## II. LEGAL STANDARDS

### A. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." *See* Fed.R.Civ.P. 56(b). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). Courts will construe all evidence and draw all evidentiary inferences in favor of the non-moving party. *See* 10A *Charles Alan Wright et al., Federal Practice & Procedure* § 2727, 459 & nn.4,5 (3rd ed. 1998)(citing *Adickes v. S.H. Kress & Co., 3*98 U.S. 144 (1970)).

A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[T]he mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.  The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *See Provenz v. Miller,* 102 F.3d 1478, 1489-90 (9th Cir. 1996); *Angel v. Seattle-First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981)(stating that a "motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data").

Plaintiff asserts that his rights were violated when he was arrested and charged with criminal trespass for refusing to leave the federal building after being instructed to do so by federal security officers.  The Court's task, therefore, is to determine if defendants Davis and Winborg had probable cause to arrest plaintiff.

> The Court's "task in determining whether probable cause to arrest existed as a matter of law in [a civil action] is slightly different from a similar determination in the context of a direct review of a criminal arrest.  In the latter situation, [courts] are called upon to review both law and fact and to draw the line as to what is and is not reasonable behavior. [Courts] are not always in agreement as to its location, but a line must be drawn.  By contrast, in a [civil action] the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury, and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest.

*See McKenzie v. Lamb,* 738 F.2d 1005, 1007-08 (9th Cir. 1984) (internal citations omitted).  It is appropriate for the Court to decide the issue of probable cause in this case on summary judgment because no reasonable jury could determine, under the facts of this case, that the officers lacked probable cause to arrest DeNardo.

    **B.**    **Standard for Qualified Immunity**

The standard for evaluating qualified immunity depends upon the objective legal reasonableness of the action and the legal rules in effect at the time the action was taken:

> [G]overnment officials performing discretionary functions [have] … qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action … assessed in light of the legal rules that were clearly established at the time it was taken.

*Anderson v. Creighton,* 438 U.S. 635, 638-39 (1987) (internal citations and quotations omitted).

The Ninth Circuit addressed the analytical framework for qualified immunity in *Cunningham v. Gates,* 229 F.3d 1271, 1287 (9th Cir. 2000), explaining: "a district court must decide whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights," citing *Anderson v. Creighton*, 438 U.S. 635, 636-37, 107 S.Ct. 3034. The *Cunningham* court went on to hold: "In short, in resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant (as viewed in a light most favorable to the plaintiff)." *Cunningham, supra*, at 1287.

An earlier opinion from the Ninth Circuit employed a two part test to determine if the official's actions are covered by qualified immunity:

> The court must first determine whether the plaintiff has alleged a violation of a right that is clearly established and stated with particularity. The contours of the right must be sufficiently clear that a reasonable official

> would understand that what he is doing violates that right. The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established. Second, the court must consider whether, under the facts alleged, a reasonable official could have believed that his conduct was lawful. It is the defendant's burden to show that a reasonable officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right. Of course, if the facts alleged by the defendant officers could not support a reasonable belief that their conduct was lawful, they are not entitled to qualified immunity. The determination of whether a reasonable officer could have believed his conduct was lawful given the totality of the circumstances is a determination of law that can be decided on summary judgment *if* the material facts are undisputed.

*Collins v. Jordan,* 110 F.3d 1363, 1369-70 (9th Cir. 1996) (internal quotations and citations omitted). Applying this two part test to the specific conduct complained of reveals that summary judgment must be granted in this case.

### III.   LEGAL ARGUMENT

#### A.   Two Part Test

1. <u>Plaintiff Has Not Alleged a Violation of a Clearly Established Constitutional Right.</u>

Plaintiff's Complaint alleges: 1) that he was exercising his right to access the court; 2) that defendants arrested him and charged him with trespass under municipal code; 3) that the charges were withdrawn; and 4) that defendants violated his right under Articles 1,3,5,7 and 14 of the Alaska Constitution.

Using interrogatories, plaintiff was asked to elaborate on his claims that his rights were violated and he suffered emotionally and economically as a result. In each of his responses he either said "see verified complaint" or he objected to the interrogatory. *See,* Plaintiff's Discovery Answers, Responses to Interrogatories 1 – 9, Exhibit A.

Consequently, the sum total of the information provided by Plaintiff concerning his claims and alleged damages is 1) defendants arrested plaintiff for trespass under AMC 8.45.010 while attempting to access a federal facility, and 2) the charges were later withdrawn.

Plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established. *Collins, supra.* All plaintiff has alleged is that he was attempting to enter the federal building when he was arrested for trespass. His complaint also implies that the arrest was improper because the prosecutor elected to dismiss the charge. Taken together, plaintiff alleges that he has a constitutional right to access a federal building and he was unlawfully denied that right when he was arrested for trespass.

What plaintiff's complaint fails to mention is that he was attempting to enter the federal building without showing valid identification – an act of defiance calculated to challenge the security measures in effect at the time. This information is essential when evaluating whether a reasonable city policeman would know if arresting plaintiff violated clearly established rights. It is one thing to prevent a law abiding, cooperative citizen from accessing a federal courthouse. It is quire a different matter when the individual is deliberately defying the reasonable instructions of those in charge of access to the facility.

The validity of the identification policy need not be determined in these proceedings because the test of whether defendants can be sued is not whether Mr.

DeNardo was correct in his reading of the law. The test is whether the standard he advocates was clearly established and well known when defendants arrested him for trespass.

> The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages. *Davis v. Scherer,* 468 U.S., 183, 195, 104 S.Ct., 3012, 3019. (1984). Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law. That security would be utterly defeated if officials were unable to determine whether they were protected by the rule without entangling themselves in the vagaries of the English and American common law.

*Creighton*, 438 U.S. at 646. Plaintiff has not alleged any facts that defendants Winborg and Davis knew or should have known that arresting plaintiff was unreasonable under the circumstances.

The decision not to prosecute does nothing for Mr. DeNardo's case. Prosecutors have a duty to prosecute public offenses on behalf of the people, but the final decision of whether to prosecute rests in the discretion of the prosecutor alone. *Bordenkircher v. Hayes,* 434 U.S. 357, 54 L.Ed. 2d 604, 98 S.Ct. 663, *reh den* 435 U.S. 918, 55 L.Ed. 2d 511, 98 S.Ct. 1477 (holding that the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation as long as the selection is not deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification). In other words, the duty to prosecute is not absolute but qualified, requiring the prosecuting attorney only to exercise a sound discretion, which permits refraining from prosecuting whenever the prosecutor in good faith thinks that a

prosecution would not serve the best interests of the state.  Am.Jur.2d, *Prosecuting Attorneys*, § 21.

The prosecutor's decision not to pursue the trespass claim does not imply that the arrest was unlawful.  Without more, the decision not to prosecute the trespass charge does nothing to advance plaintiff's claim that his rights were violated.

2.   The Conduct of Officers Davis and Winborg was Lawful

Officers Winborg and Davis reasonably believed that their conduct was lawful.  They were called to the scene by federal security personnel responsible for monitoring access to the federal building.  They were informed that plaintiff had been issued a citation, that plaintiff had been instructed to leave the premises and that he had refused to do so.  Officers Winborg and Davis therefore had probable cause to arrest plaintiff for trespass.

AMC 8.45.010 defines the crime of criminal trespass as follows:

A person commits the crime of criminal trespass if the person:

\* \* \*

(3) *Knowingly enters or remains on public premises* or property, or in a public vehicle when the premises, property, or vehicle is not open to the public or *after the person has been requested to leave by someone with the apparent authority to do so*.

This law is clear.  APD officers are to arrest individuals that intentionally remain on public property after being instructed to leave by someone with apparent authority to do so.  Under the trespass ordinance it matters naught whether federal security officers can validly require proper identification as a condition of entering the federal building,

unless plaintiff demonstrates that the right to enter without identification was clearly established and well known in December 2002. Otherwise, the only thing that matters is whether the federal security officers had apparent authority to instruct individuals to leave the premises.

## IV.   CONCLUSION

Officers Davis and Winborg were justified in arresting plaintiff. The requirement to produce identification has been in force for several years and it continues to be standard operating procedure for all federal buildings across the country. Defendants observed plaintiff on the premises; they were aware that plaintiff had been instructed to leave by the uniformed guards stationed at the building entrance; they reasonably believed the security personnel had authority to expel plaintiff and they observed plaintiff being uncooperative. Thus, the actions of Davis and Winborg were entirely consistent with AMC 8.45.010.

If the law governing defendants' conduct is clearly established, qualified immunity is available if a reasonable official could have believed the conduct at issue was lawful under that clearly established law. *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994). No reasonable police officer would have concluded that plaintiff had an absolute right to enter or remain in the federal building after being instructed to leave by federal security officers. Defendants had no reason to doubt the authority of the federal security officers. Under the circumstances, defendants are shielded from any civil liability to plaintiff.

Plaintiff's complaint contains no separate or distinct claim against the Municipality of Anchorage, meaning whatever liability the Municipality may have is derivative, arising from the conduct of its employees. Since the employees have no liability, the claims against the Municipality must similarly fail.

Respectfully submitted this 15th day of February, 2006.

          FREDERICK H. BONESS
          Municipal Attorney

By: s/ Robert P. Owens

    Robert P. Owens
    Assistant Municipal Attorney
    Municipal Attorney's Office
    P.O. Box 196650
    Anchorage, Alaska 99519-6650
    (907) 343-4545
    (907) 343-4550
    uslit@muni.org
    Alaska Bar No. 8406043

The undersigned hereby certifies that on Feb. 15, 2006
a true and correct copy of the Defendants' Memorandum
in Support of Motion for Summary Judgment was served on:

- Daniel DeNardo
P.O. Box 100682
Anchorage, Alaska 99510

by first class regular mail, if noted above, or by electronic
means throught the ECF system as indicated on the Notice
of Electronic Filing
s/ Elaine Loew_____